## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |  |
|---|---|---|
| ZOLON PCS II, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 25-21 |
| | ) | |
| THE UNITED STATES, | ) | Filed: April 15, 2025 |
| | ) | |
| Defendant, | ) | Re-issued: April 30, 2025[*] |
| | ) | |
| and | ) | |
| | ) | |
| EXACTA SOLUTIONS, LLC, *et al.*, | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |
| | ) | |

## OPINION AND ORDER

This is the second bid protest brought in this Court by disappointed bidder Zolon PCS II, LLC ("Plaintiff" or "Zolon"), challenging an ongoing corrective action taken by the National Geospatial-Intelligence Agency ("NGA" or "Agency") related to a solicitation for management support services. In the prior protest, Zolon sought to enjoin an amendment to the solicitation that incorporated a one-time deviation from the Federal Acquisition Regulation's ("FAR") System for Award Management ("SAM") continuous registration requirement. The deviation had the effect of allowing three of the five original awardees to continue to compete for a new award during the corrective action, despite the fact that the awardees had SAM registration lapses. The Court set aside the deviation as arbitrary and capricious. Within a few months of the Court's decision, and

---

[*] The Court issued this opinion under seal on April 15, 2025, and directed the parties to file any proposed redactions by April 22, 2025. As no party submitted proposed redactions, the Court reissues the opinion publicly in full.

while the procurement remained in corrective action, the Federal Acquisition Regulatory Council ("FAR Council") revised the SAM registration rule to eliminate the requirement for continuous registration.  The NGA then incorporated the new version of the rule into the solicitation via another amendment.  Zolon again argues that the amendment is arbitrary and capricious, as well as contrary to law.  Four of the five awardees have intervened as defendants.  All parties moved for judgment on the administrative record.

For the reasons explained below, the Court **GRANTS** the Government's Motion to Complete the Administrative Record, **DENIES** Zolon's Motion for Judgment on the Administrative Record, and **GRANTS** the Government's and Defendant-Intervenors' Cross-Motions for Judgment on the Administrative Record.  In addition, the Court **DENIES AS MOOT** Defendant-Intervenor Exacta Solutions, LLC's Motion to Dismiss and the Government's Motion to Modify Protective Order.

## I.    BACKGROUND

### A.    Factual and Prior Procedural Background

This bid protest concerns Solicitation No. HM0476-21-R-0023 ("Solicitation" or "RFP") for a procurement referred to as "CLOVER."  A fulsome factual and procedural background, including a description of the RFP as amended, the prior Government Accountability Office ("GAO") protests, and the corrective action, is provided in the Court's August 2024 opinion and order issued in Plaintiff's first bid protest.  *See Zolon PCS II, LLC v. United States*, 172 Fed. Cl. 742, 747–50 (2024) ("*Zolon I*").  In that opinion, the Court found that the plain text of the SAM registration requirement in effect at the time, FAR 52.204-7 (OCT 2018), which was incorporated in the original RFP's proposal submission requirements, required offerors to maintain continuous SAM registration from the time of initial offer to the time of award.  *Id.* at 742 ("[O]fferors must

2

be registered in SAM at the time they submit an offer and must 'continue to be registered until time of award' and through contract performance." (quoting FAR 52.204-7(b)(1) (OCT 2018))). It further held that the NGA failed to provide a rational basis for deviating from that mandatory requirement and enjoined the NGA from proceeding under the RFP amendment to the extent it incorporated the deviation. *Id.* at 752, 761–63. The Court granted judgment in favor of Zolon on August 29, 2024. *See id.* at 747.

Following the Court's August 2024 opinion in *Zolon I*, the CLOVER procurement returned to, and has since remained in, an ongoing corrective action posture. Aside from the issue of SAM registration, as part of the corrective action the NGA committed to "reassessing the relevant experience, past performance, and risk assessment volume[s]" submitted by offerors. AR 20543. Following re-evaluation, the NGA plans to make new award decisions. *Id.* The NGA has thus required offerors over the course of the corrective action to periodically update their proposals with information necessary for the re-evaluation, including recertifying labor rates, recertifying the validity of proposals, and recertifying and resubmitting conflict of interest disclosures. *See* AR 20560, 20831, 20859, 20883.

It was during this post-*Zolon I* phase of the ongoing corrective action that the FAR Council changed the SAM registration rule. Specifically, on November 12, 2024, the FAR Council issued a new interim rule changing FAR 52.204-7 to remove the continuous SAM registration requirement. AR 20882–87. Effective immediately, to be eligible for a contract award, offerors must simply have an active SAM registration "when submitting an offer . . . and at time of award." 89 Fed. Reg. 89472-01, 89475 (Nov. 12, 2024). The FAR Council explained in the Federal Register that the new rule was intended to "clarify" that SAM registration is required at those two points in a procurement, but not necessarily "at every moment in between those two points." *Id.*

at 89472–73; *see* Def.'s Cross-Mot. for J. on Admin. R. at 17–18, ECF No. 50.  Clarification was necessary given the numerous bid protest decisions, including in *Zolon I*, that interpreted the plain text of FAR 52.204-7 (OCT 2018) as requiring an offeror to maintain uninterrupted registration from the point of offer submission through contract award.  89 Fed. Reg. at 89474.  Despite its choice of language, the FAR Council explained that it did not intend the prior version of the rule to impose "new requirements with such severe ramifications for offerors."  *Id.*  The Council stated that the "unintended interpretation" of the courts had "resulted in [a] loss of resources for otherwise successful small business offerors (e.g., time and costs of litigation, lost income)," caused delays in agency-mission execution, and deprived the Government of best-value providers.  *Id.* at 89473–74.  The Council made the interim rule immediately effective in order to avoid those costs as well as "undue confusion and frustration" for small businesses and contracting officers.  *Id.* at 89474.  The Council provided a public notice and comment period, which ended on January 13, 2025.  *See id.* at 89475; ECF No. 50 at 19.

On December 4, 2024, the NGA issued Amendment 12 to the RFP.  Most relevant here, the amendment replaced FAR 52.204-7 (OCT 2018) with FAR 52.204-7 (NOV 2024) in the RFP's proposal submission instructions.  The amendment also removed the deviation that was the subject of the first bid protest, changed the period of performance to begin May 19, 2025, and requested final proposal revisions by January 10, 2025.  AR 20882–83.  The NGA later issued a Memorandum for Record ("MFR") on December 30, 2024, explaining its reasoning for incorporating the changed rule into the CLOVER procurement via Amendment 12.  AR 20887–92.  The MFR explained that incorporation was warranted for, among other things, the reasons described by the FAR Council in the published interim rule.  AR 20891.  It also explained that incorporating the new rule "carries out the NGA's original intent for SAM registration" because

the NGA had not interpreted the 2018 rule to require continuous registration. *Id.* Incorporation also enables the NGA to make awards to best-value offerors "based on the stated evaluation criteria," without eliminating potential awardees for "an administrative issue that has absolutely no practical impact on the Government." AR 20892.

Eleven offerors submitted final proposal revisions in response to Amendment 12. AR 20893–21668. The Government represented that the NGA has diligently engaged in the re-evaluation that it committed to during the corrective action and has voluntarily agreed to stay making new awards through April 15, 2025, to allow for the Court to issue a final decision in this bid protest. ECF No. 50 at 16 n.4, 39.

## B.    This Litigation

On January 8, 2025, Zolon filed a Complaint challenging the NGA's incorporation of FAR 52.204-7 (NOV 2024) into the RFP via Amendment 12. Zolon alleges that the NGA again seeks to change the RFP post-award to remove the continuous SAM registration requirement set forth in FAR 52.204-7 (OCT 2018) and restore the eligibility of its previously selected awardees. Compl. ¶ 8, ECF No. 1. Although this time the NGA is doing so through an amendment incorporating the new FAR rule instead of a deviation from the prior FAR rule, Zolon argues that "similar improprieties exist, and the Agency still lacks a rational basis for its actions." *Id.* Because the amendment "conveniently removed the continuous SAM registration requirement under which several of the previously selected awardees should have been deemed incurably deficient," Zolon adds that Amendment 12 is intended to help a few particular offerors. *Id.* ¶ 10. Zolon also argues that FAR 52.204-7 (NOV 2024), which is still an interim rule, does not provide for retroactive application to solicitations issued before the rule's effective date. *Id.* ¶¶ 81–82. Accordingly, Zolon urges the Court to conclude that Amendment 12 is arbitrary, capricious, an abuse of

discretion, and otherwise unlawful.  *Id.* ¶ 104.  Zolon further alleges that Amendment 12 constitutes a breach of the NGA's implied duty to fairly and honestly consider Zolon's proposal. *Id.* ¶ 107.  It requests a permanent injunction barring the NGA from proceeding with a corrective action re-evaluation of proposals under Amendment 12, disqualifying offerors who failed to comply with FAR 52.204-7 (OCT 2018), and directing the agency to re-evaluate the remaining offerors' proposals in accordance with the RFP and render a new award decision.  *Id.* at 40 (Request for Relief).  It also requests bid proposal costs.  *Id.*

Consistent with the Court's scheduling order, Zolon moved for judgment on the administrative record.  *See* Pl.'s Mot. for J. on Admin. R., ECF No. 45.  The Government and Defendant-Intervenors cross-moved for judgment on the administrative record, with one of the intervenors (Exacta) also moving to dismiss the case for lack of standing.  *See* ECF No. 50; Compass' Cross-Mot. & Resp., ECF No. 47; Logic Gate's Cross-Mot. & Resp., ECF No. 48; Credence Dynamo's Cross-Mot. & Resp., ECF No. 52; Exacta's Mot. to Dismiss, Cross-Mot. & Resp., ECF No. 53.  Also before the Court is the Government's Motion to Complete the Administrative Record with documents showing the NGA terminated the original CLOVER awards after issuing Amendment 12.  *See* ECF No. 49.  All motions are now fully briefed.[1]  *See* Pl.'s Resp. & Reply, ECF No. 56; Def.'s Reply, ECF No. 67; Logic Gate's Reply, ECF No. 62; Credence Dynamo's Reply, ECF No. 63; Exacta's Reply, ECF No. 64; *see also* Pl.'s Resp. to Mot.

---

[1] The Government also filed a motion requesting that the Court modify the Protective Order entered in this case to allow personnel from the Small Business Administration access to protected materials.  Def.'s Mot. to Modify, ECF No. 65.  As grounds for the request, the Government stated that "the parties have presented issues in this bid protest that implicate small business concerns that require consultation with the Small Business Administration."  *Id.* at 2.  The Government subsequently withdrew arguments based on such concerns—*i.e.*, Zolon's mentor-protégé agreement.  *See* Def.'s Notice of Withdrawal at 1, ECF No. 68.  Accordingly, the Court denies the motion to modify as moot.

to Complete, ECF No. 58; Def.'s Reply on Mot. to Complete, ECF No. 66.  The Court held oral

argument on March 20, 2025.  *See* Min. Entry (March 20, 2025).

## II.   LEGAL STANDARDS

### A.    Motion for Judgment on the Administrative Record

Rule 52.1(c) of the Rules of the United States Court of Federal Claims ("RCFC") governs

motions for judgment on the administrative record.  Such motions are "properly understood as . . .

an expedited trial on the record."  *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir.

2005).  In contrast to the standard for summary judgment, "the standard for judgment on the

administrative record is narrower" and involves determining, "given all the disputed and

undisputed facts in the administrative record, whether the plaintiff has met the burden of proof to

show that the [challenged action or] decision was not in accordance with the law."  *Martinez v.

United States*, 77 Fed. Cl. 318, 324 (2007) (citing *Bannum*, 404 F.3d at 1357).  Therefore, a

genuine issue of disputed fact does not prevent the Court from granting a motion for judgment on

the administrative record.  *See Bannum*, 404 F.3d at 1357.

### B.    Bid Protest Standard of Review

The Tucker Act, as amended by the Administrative Dispute Resolution Act of 1996,

provides the Court of Federal Claims with "jurisdiction to render judgment on an action by an

interested party objecting to . . . the award of a contract or any alleged violation of statute or

regulation in connection with a procurement."  28 U.S.C. § 1491(b)(1).  In such actions, the Court

"review[s] the agency's decision pursuant to the standards set forth in section 706" of the

Administrative Procedure Act ("APA").  *Id.* § 1491(b)(4); *see Banknote Corp. of Am., Inc. v.

United States*, 365 F.3d 1345, 1350 (Fed. Cir. 2004).  Accordingly, the Court examines whether

the agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law." 5 U.S.C. § 706(2)(A); *see Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 n.5 (Fed. Cir. 2001). Under such review, an "award may be set aside if either: (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa*, 238 F.3d at 1332.

In reviewing an agency's procurement decision, the Court may not substitute its own judgment for the agency's. *Id.* (citations omitted); *see M.W. Kellogg Co. v. United States*, 10 Cl. Ct. 17, 23 (1986) (deference required if "procurement decisions . . . have a rational basis and do not violate applicable law or regulations"). The Court "will not vacate an agency's decision unless it 'has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a [different view] or [agency expertise].'" *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007) (citation omitted). A procurement decision is rational if the agency "provided a coherent and reasonable explanation of its exercise of discretion." *Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 992 (Fed. Cir. 2018) (citation omitted). A protestor therefore bears a "heavy burden," *Impresa*, 238 F.3d at 1332–33 (citation omitted), in demonstrating that an agency decision exceeded the "bounds of reasoned decision making," *Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 105 (1983).

The APA, however, "prescribes no deferen[ce]" to agencies' legal determinations. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 391–92 (2024) ("The APA . . . specifies that courts, not agencies, will decide '*all* relevant questions of law.'" (quoting 5 U.S.C. § 706)); *see also, e.g., Eagle Hill Consulting, LLC v. United States*, 171 Fed. Cl. 115, 129 (2024) ("[This Court] does not

afford deference on questions of law." (citation omitted)).  For example, the "interpretation of . . . procurement regulations presents [legal] questions" that get de novo review.  *Eagle Hill Consulting*, 171 Fed. Cl. at 129 (citing *NVT Techs, Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004); *United States v. Boeing Co.*, 802 F.2d 1390, 1393 (Fed. Cir. 1986)).

To prevail in a bid protest, the "protestor must [also] show a significant, prejudicial error in the procurement process."  *WellPoint Mil. Care Corp. v. United States*, 953 F.3d 1373, 1377 (Fed. Cir. 2020) (quoting *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999)); *see also* 5 U.S.C. § 706 ("due account shall be taken of the rule of prejudicial error"). In post-award protests, the protestor demonstrates prejudice by showing that, but for the error, the protestor had a substantial chance of receiving a contract award.  *Off. Design Grp. v. United States*, 951 F.3d 1366, 1373–74 (Fed. Cir. 2020).  In pre-award protests, however, "it is difficult, if not impossible, to establish a substantial chance of winning the contract prior to the submission of any bids."  *Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1348 (Fed. Cir. 2013) (citing *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1361 (Fed. Cir. 2009)).  Accordingly, the United States Court of Appeals for the Federal Circuit has approved a different standard, more frequently applied in the standing context, which requires the Court to assess whether the agency's error caused the protestor to suffer a "non-trivial competitive injury."  *Weeks Marine*, 575 F.3d at 1362. A court should still apply the "substantial chance" standard, however, in pre-award cases where there is "an adequate factual predicate" to apply the test.  *Oracle Am., Inc. v. United States*, 975 F.3d 1279, 1291 n.3 (Fed. Cir. 2020); *see generally Aero Spray, Inc. v. United States*, 156 Fed. Cl. 548, 563–64 (2021) (explaining that the "substantial chance" standard should apply when there are sufficient facts before the court to apply it).

**C.    Motions to Complete or Supplement the Administrative Record**

Different standards govern motions to complete and motions to supplement the administrative record. The standard for completing the record is less stringent than that of supplementing it. *See Linc Gov't Servs., LLC v. United States*, 95 Fed. Cl. 155, 159 (2010). "Ordinarily, the government's designation of an administrative record is entitled to a presumption of completeness," but "courts have recognized that this [presumption] can be rebutted with clear evidence to the contrary." *Poplar Point RBBR, LLC v. United States*, 145 Fed. Cl. 489, 494 (2019). A motion to complete is appropriate when a party seeks to add "information that was generated and considered by the agency" during the procurement but was omitted from the filed record. *Smith v. United States*, 114 Fed. Cl. 691, 695 (2014), *aff'd*, 611 F. App'x 1000 (Fed. Cir. 2015). Separate from this standard, the Court's rules list "relevant" "core documents" that may "qualify for inclusion in the administrative record." *Poplar Point*, 145 Fed. Cl. at 494; RCFC App. C § VII, ¶ 22.

By comparison, bid-protest parties have a "limited" ability to supplement the record. *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009). This is because "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Id.* (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). Thus, the record "should be supplemented only if the existing record is insufficient to permit meaningful review consistent with the [APA]." *Id.* at 1381. Courts have thus found supplementation appropriate where the supplemental material is "necessary to help explain an agency's decision," *Orion Int'l Techs. v. United States*, 60 Fed. Cl. 338, 343 (2004) (citing *Camp*, 411 U.S. at 142–43); helps explain what the contracting officer considered in reaching a decision, *Precision Standard, Inc. v. United States*, 69 Fed. Cl. 738, 747 (2006), *aff'd*, 228 F. App'x 980

(Fed. Cir. 2007); or "correct[s] mistakes and fill[s] gaps" in the administrative record, *Pinnacle Sols., Inc. v. United States*, 137 Fed. Cl. 118, 130 (2018) (citing *Axiom*, 564 F.3d at 1379–81).

### III. DISCUSSION

This dispute concerns Plaintiff's allegation that the NGA's incorporation of FAR 52.204-7 (NOV 2024) into the amended RFP was irrational and contrary to law because it had the effect of removing the continuous SAM registration requirement that otherwise rendered several awardees ineligible. In addition, the Government requests to complete the Administrative Record with notices of termination issued on February 20, 2025, showing that the NGA terminated the original May 2023 awards. ECF No. 49 at 1. Addressing the issues in reverse order, the Government's Motion to Complete is granted because the notices are, in any event, necessary for meaningful judicial review. In addition, the Court concludes that the NGA lawfully and reasonably incorporated FAR 52.204-7 (NOV 2024) through Amendment 12, and thus the amendment should not be set aside. Given that holding, Exacta's Motion to Dismiss is denied as moot.

### A. The Notices of Termination Are Necessary for Meaningful Judicial Review.

As a threshold matter, the Court first reviews the Government's Motion to Complete. *See* ECF No. 49. To guide an agency in compiling an administrative record, the Court's rules provide a non-exhaustive list of "core documents relevant to a protest" that the agency "may include, as appropriate." RCFC App. C § VII, ¶ 22. This list includes "documents relating to any stay, suspension, or termination of award or performance pending resolution of the bid protest." *Id.* ¶ 22(s). The Government argues that, although the termination notices were issued after Amendment 12, they fall under ¶ 22(s) as "documents relating to any . . . termination of award" and should therefore be added to the record. ECF No. 49 at 3. Zolon asserts that ¶ 22(s) only

allows such core documents to be included in the administrative record "as appropriate." ECF No. 58 at 6, 10. According to Zolon, the case law establishes that the only appropriate documents for purposes of the administrative record are "those materials developed and considered by the agency in making its decision," *Insight Pub. Sector v. United States*, 157 Fed. Cl. 398, 407 (2021) (cleaned up), and that "[t]he record should not include materials created or obtained subsequent to the agency's decision," *Allied Tech. Grp., Inc., v. United States*, 92 Fed. Cl. 226, 229–30 (2010). Zolon asserts that the Court should instead treat the Government's Motion to Complete as a Motion to Supplement and apply the more stringent standard—a standard the Government does not meet. ECF No. 58 at 9.

Even applying the higher supplementation standard, the Government has met its burden. The Court finds that the termination notices are necessary "to permit meaningful review consistent with the APA." *Axiom*, 564 F.3d at 1381. Zolon repeatedly emphasizes in its dispositive motion that, as of the date of filing, the NGA had not terminated the unlawful awards initially made in May 2023. *See, e.g.*, ECF No. 45 at 24 n.4 ("To repeat, the Agency still has not terminated its initial, unlawful awards."); *id.* at 5, 9, 30 n.6, 32, 36, 38, 40, 43 n.8. Indeed, as part of its request for relief, Zolon asks the Court to terminate the awards. *Id.* at 44. This factual representation permeates Zolon's merits arguments, both challenging Amendment 12 and asserting that the Agency breached its implied duties. In particular, Zolon argues that the limited exception in FAR 1.108(d)(2) that allows contracting officers to include FAR changes in solicitations issued before the effective date of the new rule does not apply "because contract awards were issued on May 24, 2023 . . . and they apparently have not been terminated." *Id.* at 32.

The notices establish that the NGA has since terminated the initial May 2023 CLOVER awards. Ex. A to Def.'s Mot. to Complete at 1–5, ECF No. 49-1. Zolon did not object to the

NGA's issuing of the notices; in fact, it is the result for which Zolon advocated.  *See* ECF No. 49 at 2; Oral Arg. Tr. at 18:25–19:24, ECF No. 74.  In short, the termination notices constitute part of what "actually transpired" in this procurement, and they must be considered by the Court to resolve the parties' arguments.  *See AshBritt, Inc. v. United States*, 87 Fed. Cl. 344, 366 (2009) ("Allowing a protest to be decided upon an [administrative record] which does not reflect what actually transpired would perpetuate error and impede and frustrate effective judicial review.").  For these reasons, the Government's Motion to Complete is granted.

**B.    Amendment 12 Is Not Arbitrary and Capricious or Contrary to Law.**

Proceeding to the merits, Zolon argues that (1) the NGA lacks authority to incorporate a FAR change in the Solicitation, (2) Amendment 12 impermissibly applies FAR 52.204-7 (NOV 2024) retroactively to the CLOVER procurement, and (3) the NGA's rationale for incorporating the new rule was otherwise arbitrary and capricious.  Each of these grounds fails.

1.    <u>The FAR Authorizes the NGA to Include New Regulations in Existing Solicitations.</u>

As an initial matter, the Court must determine whether the FAR expressly authorized the NGA's incorporation of FAR 52.204-7 (NOV 2024) into Amendment 12.  FAR 1.108(d) provides guidance to contracting officers about when to apply new FAR rules to solicitations and contracts.  It states:

> (d) *Application of FAR changes to solicitations and contracts*.  Unless otherwise specified—
>> (1) FAR changes apply to solicitations issued on or after the effective date of the change;
>> (2) Contracting officers may, at their discretion, include the FAR changes in solicitations issued before the effective date, provided award of the resulting contract(s) occurs on or after the effective date; and
>> (3) Contracting officers may, at their discretion, include the changes in any existing contract with appropriate consideration.

FAR 1.108(d).  Zolon argues that this provision does not apply because, in this case, the NGA issued awards in May 2023, which it did not terminate until after it issued the amendment.  ECF No. 45 at 31–32.  Zolon adds that the NGA did not cite to FAR 1.108(d)(2) in its MFR explaining its reasons for incorporating FAR 52.204-7 (NOV 2024) in Amendment 12, so it cannot now justify the rationality of its decision by reference to the provision.  *Id.* at 33.  Neither argument is persuasive.

The key question to determining whether FAR 1.108(d)(2) applies here is whether "resulting contract(s)" in the CLOVER procurement will occur after November 12, 2024—the effective date of FAR 52.204-7 (NOV 2024).  The term "resulting" means, in ordinary speech, "[t]o happen as a consequence." *Resulting*, *The American Heritage Dictionary* (5th ed. 2022); *see* FAR 1.108(a) ("Undefined words retain their common dictionary meaning.").  Thus, the Court must analyze whether the CLOVER contracts will be awarded as a consequence of Amendment 12.  If so, then the NGA had the discretion to incorporate the new rule by way of amendment.  *See DigiFlight, Inc. v. United States*, 167 Fed. Cl. 158, 167 (2023), *appeal dismissed*, No. 2024-1051, 2023 WL 7179084 (Fed. Cir. Nov. 1, 2023) (noting FAR 1.108(d)(2) "allow[s] contracting officers to amend solicitations . . . to include regulatory changes that become effective after the solicitation . . . is issued").

Here, the NGA has represented that it intends to issue new awards at the conclusion of the corrective action re-evaluation.  *See* ECF No. 50 at 23–24.  The Court recognized as much in *Zolon I.  See* 172 Fed. Cl. at 749, 758.  And although the NGA previously told the GAO in connection with the corrective action notice that it would simply "lift the stop work order" "[i]f the new award decision is to the original awardees," AR 20543, as a functional matter it cannot do so at this point. The Agency made the initial CLOVER awards almost two years ago based on proposals submitted

in response to a Solicitation that has since been amended six times. The NGA, presumably appreciating that its earlier representation to GAO had been overtaken by events, formally terminated the initial CLOVER awards on February 20, 2024. *See* ECF No. 49-1. Accordingly, at the conclusion of the corrective action, the Agency will unquestionably be making new awards. Those awards will "happen as a consequence" of Amendment 12, incorporating the new SAM registration rule, after the effective date of the new rule. Regardless of other questions about the incorporation's legality (such as retroactivity and rationality), the Court finds that FAR 1.108(d)(2) gives the NGA discretion to include FAR 52.204-7 (NOV 2024) in the Solicitation via Amendment 12.

Zolon argues that FAR 1.108(d)(2) "cannot be applied to the CLOVER procurement to permit retroactive application of FAR 52.204-7 (NOV 2024)" because the NGA already made contract awards (now terminated) in the procurement. ECF No. 45 at 32. According to Zolon, the provision applies only where a solicitation is ongoing *and* the procuring agency has never made an award. Zolon's reading of FAR 1.108(d)(2) does not square with its text. The provision does not limit its applicability to a procurement where the agency has not yet made *any award*, nor does it limit its applicability to procurements where the *initial contract award* is made after the new rule's effective date. It states that contracting officers "may, at their discretion, include the FAR changes in solicitations issued before the effective date, provided *award of the resulting contract(s)* occurs on or after the effective date." FAR 1.108(d)(2) (emphasis added). As explained above, the Government has repeatedly represented that it intends to make new awards— *i.e.*, awards of resulting contracts—under Amendment 12. To accept Zolon's interpretation would effectively prohibit contracting officers from exercising their discretion under FAR 1.108(d)(2) in

any post-award corrective action.  The Court will not read into the FAR a limitation that has no grounding in the provision's language.

Zolon further asserts that FAR 1.108(d)(2) cannot apply here because the NGA did not purport to rely on that provision in Amendment 12 or in the MFR explaining the Agency's rationale for incorporating FAR 52.204-7 (NOV 2024) in the amendment.  ECF No. 56 at 10.  It characterizes the Government's reliance on the provision in its dispositive briefing as an impermissible post-hoc rationalization.  *Id.*  However, FAR 1.108(d)(2) is not a rationale for the NGA's decision to incorporate the new SAM registration rule into Amendment 12, it is the source of authority that permits the Agency to do so.[2]  Zolon cites no authority for the proposition that an agency must expressly refer to FAR 1.108(d)(2) in order to exercise its discretion under that provision when incorporating a new FAR rule into a solicitation.  Nor does FAR 1.108(d)(2) contain any documentation requirement that an agency must follow when exercising its discretion under that provision.  Zolon lists examples of other, unrelated FAR changes where it appears the FAR Council made it "abundantly clear in the Federal Register" upon issuing those changes that it intended for them to apply to existing solicitations.  ECF No. 45 at 32–33 (citing, *e.g.*, 78 Fed. Reg. 70477, 70478 (2013)).  But the discretion provided to contracting officers in FAR 1.108(d)(2) is not dependent on the FAR Council's express approval, and the FAR Council's statements with

---

[2] To be sure, when an agency claims it relied on a particular authority in making a decision, the Government may not argue after-the-fact that the agency's decision was rational under a separate authority on which the agency did not contemporaneously rely.  *See, e.g.*, *BAE Sys. Norfolk Ship Repair, Inc. v. United States*, 163 Fed. Cl. 217, 227 (2022) ("An agency must defend its actions based on the reasons it gave when it acted." (quoting *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1909) (2020))).  To that end, the Court agrees with Zolon that the NGA must defend its action based on the reasons that it invoked in the MFR.  Here, the Court is merely analyzing whether the FAR permitted the challenged action under FAR 1.108(d).  When considering the rationality of the NGA's action, the Court will accordingly consider only the reasons the NGA gave for taking such action.  *See infra* § III.A.3.

respect to certain individual rule changes does not demonstrate that an agency must cite FAR 1.108(d)(2) as Zolon suggests. Arguably, the FAR Council's stated intention for the application of a new FAR rule to an ongoing solicitation may be relevant under a retroactivity analysis—and the Court will consider the rule against retroactivity in the next part—but it is irrelevant to whether FAR 1.108(d)(2) applies here.

2.     Amendment 12 Is Not Impermissibly Retroactive.

While the Court has concluded that the NGA acted within the discretion provided in FAR 1.108(d)(2) to incorporate FAR 52.204-7 (NOV 24) into Amendment 12, the question remains whether doing so was impermissibly retroactive. Zolon argues that independent of FAR 1.108(d)(2), binding precedent prohibits the type of backwards application of law accomplished in Amendment 12. ECF No. 45 at 28–29. The Court disagrees.[3]

The Supreme Court has instructed that "[r]etroactivity is not favored in the law." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). For that reason, courts interpret statutes with a presumption against retroactivity, meaning that "the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) (citation omitted). Thus, "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Id.* at 264 (citing *Bowen*, 488 U.S. at 208). This anti-retroactivity canon is an interpretive tool meant to glean a statute's meaning, rather than a substantive prohibition meant to categorically limit an agency's conduct. *See* Antonin Scalia & Bryan A. Garner, *Reading Law:*

---

[3] Because the Court finds in any event that the incorporation of FAR 52.204-7 (NOV 2024) in the Solicitation is not impermissibly retroactive, it need not address Credence Dynamo's argument that FAR 1.108(d)(2) displaces the traditional retroactivity analysis applied in non-procurement cases. *See* ECF No. 52-1 at 21.

*The Interpretation of Legal Texts* 261 (2012); *see also id.* at 262 (describing the presumption as "a canon of interpretation and not a rule of constitutional law"); *Landgraf*, 511 U.S. at 273 (noting that the Court sometimes does not apply the presumption, which is "simply a response to the language of the statute"). For that reason, applying the rule against retroactivity "is not always a simple or mechanical task." *Landgraf*, 511 U.S. at 268; *see id.* at 270 ("Any test of retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity."). Nonetheless, courts have attempted to define the boundaries of the presumption. The Supreme Court in *Landgraf* offered one "influential definition" by Justice Story: an impermissibly retroactive law is one that "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Id.* at 268–69 (citing *Soc'y for the Propagation of the Gospel v. Wheeler*, 22 F. Cas. 756, 767 (C.C.D.N.H. 1814) (No. 13,156) (Story, J.)).[4]

The Federal Circuit has applied the analysis in *Landgraf* through a two-part test, requiring a court to determine: (1) whether an application of a rule is a retroactive one, and (2) if so, whether

---

[4] *Landgraf* cited a long history of cases and secondary sources using the same essential definition as Justice Story. *See, e.g.*, *Union Pac. R.R. v. Laramie Stock Yards Co.*, 231 U.S. 190, 199 (1913) (retroactive statute gives "a quality or effect to acts or conduct which they did not have or did not contemplate when they were performed"); *Sturges v. Carter*, 114 U.S. 511, 519 (1885) (a retroactive statute is one that "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability"); Black's Law Dictionary 1184 (5th ed. 1979) (quoting Justice Story's definition from *Society*); *see also Society*, 22 F. Cas. at 767 (citing *Calder v. Bull*, 3 U.S. (3 Dall.) 386 (1798); *Dash v. Van Kleeck*, 7 Johns. 477 (N.Y. Sup. Ct. 1811))). *Landgraf* went on to state that "[s]ince the early days of this Court, we have declined to give retroactive effect to statutes *burdening* private rights unless Congress had made clear its intent." 511 U.S. at 270 (emphasis added) (citing *United States v. Heth*, 7 U.S. (3 Cranch) 399 (1806)) (declining to retroactively apply a federal statute reducing commissions of customs collectors). *Landgraf* also stated that the presumption "has consistently been explained by reference to the unfairness of *imposing new burdens* on persons after the fact." *Id.* (emphasis added).

the rule expressly demonstrates retroactive intent. *Travenol Labs., Inc. v. United States*, 118 F.3d 749, 752 (Fed. Cir. 1997). At step one, "whether a statute's application in a particular situation is prospective or retroactive depends upon whether the conduct that allegedly triggers the statute's application occurs before or after the law's effective date." *Id.* (quoting *McAndrews v. Fleet Bank of Mass., N.A.*, 989 F.2d 13, 16 (1st Cir. 1993)); *see Fed. Performance Mgmt. Sols., LLC v. United States*, No. 23-1802C, 2024 WL 34586, at *5 (Fed. Cl. Jan. 3, 2024) ("[F]or an impermissible retroactive application to exist, a party must be divested of a right it once had."). "[I]f the answer to [the step-one] question is 'yes,'" the court moves to step two to "search for a clear expression of congressional intent to apply the law retroactively." *Travenol Labs.*, 118 F.3d at 752.

Zolon argues that Amendment 12's incorporation of FAR 52.204-7 (NOV 2024) is retroactive because it creates "new legal consequences" for the offerors whose SAM registrations lapsed after initial offer submission. ECF No. 56 at 28 (quoting *Landgraf*, 511 U.S. at 270). Zolon points out that before the amendment those offerors were ineligible for award, yet after the amendment they are eligible. *Id.* Zolon's broad reading of the "new legal consequences" language from *Landgraf* is not supported by the opinion itself or other precedent. As *Landgraf* acknowledged, a statute is not impermissibly retroactive "merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law." 511 U.S. at 269 (internal citation omitted). Rather, the legal consequences that warrant finding a law "impermissibly retroactive" involve circumstances where the law "'takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past.'" *Kearfott Guidance & Navigation Corp. v. Rumsfeld*, 320 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting *Landgraf*, 511 U.S. at 269).

Here, the NGA's decision to incorporate FAR 52.204-7 (NOV 2024) through Amendment 12 does not create any "new obligation," impose a "new duty," or attach a "new disability" to any offeror, including Zolon. *Landgraf*, 511 U.S. at 269. As the Government points out, it equally *removes* an obligation for all offerors: an obligation to maintain continuous SAM registration between the time of offer and award. *See* ECF No. 50 at 34–35. If anything, the new rule makes it easier for offerors to maintain compliant SAM registrations. Accordingly, any concern about "the unfairness of imposing new burdens" based on past conduct is absent here. *Landgraf*, 511 U.S. at 270; *see Fed. Performance Mgmt. Sols.*, 2024 WL 34586, at *5 (finding no impermissible retroactivity where "the amended regulation made it easier for [joint ventures] to submit additional proposals"); *see also Kearfott*, 320 F.3d at 1375 (finding no impermissible retroactive application where the "FAR [did not] impose any new obligation, duty, or disability with respect to a transaction previously entered into by [Plaintiff]"); *Gen. Elec. Co. v. United States*, 112 Fed. Cl. 1, 13 n.12 (2013) (same).

Nor did Amendment 12 divest Zolon of a right it once had. It bears noting that applying FAR 52.204-7 (NOV 2024) to the ongoing CLOVER procurement will have no impact on the re-evaluation of Zolon's proposal, at least based on Zolon's past conduct. To the Court's knowledge, Zolon has continuously had an active SAM registration since the time of its initial offer submission to the present. The fact that it maintained continuous registration does not harm Zolon in competing for a CLOVER contract, even though continuous registration is no longer a "minimum preaward registration" requirement. 89 Fed. Reg. at 89473. Indeed, if anything, Zolon's past conduct satisfies the FAR Council's stated expectation that offerors will maintain continuous, active registration regardless of any FAR requirement. *Id.*

At oral argument, Zolon asserted that incorporating FAR 52.204-7 (NOV 2024) "impairs [Zolon's] rights because those offerors with lapsed SAM registrations were once to be disqualified and are now being allowed to compete against [Zolon] for the same number of awards." ECF No. 74 at 26:8–11.  As an initial matter, neither FAR 52.204-7 (OCT 2018) nor FAR 52.204-7 (NOV 2024) convey a right to any offeror; instead, they impose an obligation on individual offerors.  And although the NGA made FAR 52.204-7 (OCT 2018) part of the RFP's proposal submission requirements, which per the RFP would be "strictly enforce[d]," AR 1996, Zolon recognizes that an agency "typically" has "broad discretion" to amend an RFP to achieve awards on the basis of best value, ECF No. 45 at 23.  The Court recognized the same in *Zolon I*.  172 Fed. Cl. at 755 ("Ordinarily the Government may amend a solicitation to change or clarify requirements, with the stated purpose of securing the best value contract."); *see also id.* at 756 (noting that a contracting agency "has *broad* discretion to amend the solicitation when it determines that such action is necessary to obtaining the best value contract awards" (emphasis added) (quoting *ManTech Telecomms. & Info. Sys. Corp.*, 49 Fed. Cl. 57, 73 (2001), *aff'd*, 30 F. App'x 995 (Fed. Cir. 2002))); FAR 15.206(a).  The Government likewise has broad discretion to amend a solicitation to change its "terms and conditions."  FAR 15.206(a).  Those amended terms may include, at the contracting officer's discretion, subsequently issued FAR changes, "provided award of the resulting contract(s) occurs on or after the effective date" of the FAR change.  FAR 1.108(d)(2).

This all goes to show that Zolon had no vested right in the NGA applying FAR 52.204-7 (OCT 2018) to the CLOVER procurement either because of an alleged right acquired under the prior rule or because of the prior rule's incorporation in the original RFP.  As the Government correctly asserts, in an ongoing evaluation, where a final contract award has not been made, the procuring agency's discretion to amend or even cancel the solicitation means "no party [has] a

21

'vested right' in any particular solicitation provision or contract clause." ECF No. 50 at 35; *see*

*126 Northpoint Plaza Ltd. P'ship v. United States*, 34 Fed. Cl. 105, 107 (1995), *appeal dismissed*,

73 F.3d 379 (Fed. Cir. 1995) ("[A] contractor is never assured that it will receive an award," so

"the government retains discretion to reject all bids without liability . . . ."). Because the

incorporation of the new SAM registration requirement in Amendment 12 does not impair Zolon's

vested rights, create any new obligation, impose any new duty, or attach any new disability to

Zolon (or other offerors) vis-à-vis SAM registration during this procurement, the presumption

against retroactivity does not apply. Thus, the analysis ends at step one of the retroactivity test.[5]

3.    Amendment 12 Is Not Otherwise Arbitrary and Capricious.

Zolon further contends that even if Amendment 12's incorporation of FAR 52.204-7 (NOV

2024) was authorized and not impermissibly retroactive, the amendment is still arbitrary and

capricious because none of the NGA's listed reasons hold up to scrutiny. ECF No. 45 at 12–26.

As the Court previously explained, a legally permissible action may nonetheless be set aside if it

fails under the arbitrary-and-capricious standard. *See Zolon I*, 172 Fed. Cl. at 757. Here, the NGA

has provided a rational basis for its action.

First, the NGA explained that it was incorporating FAR 52.204-7 (NOV 2024) through

Amendment 12 for the reasons expressed by the FAR Council in the interim rule. Zolon does not

specifically challenge the FAR Council's reasoning for the rule change, but it is equally applicable

to the CLOVER procurement, as Exacta points out. *See* ECF No. 53 at 34. Indeed, the FAR

Council cited the Court's decision in *Zolon I*, among other bid protest decisions from this court,

---

[5] Since the Court concludes that application of the new FAR rule via Amendment 12 is not impermissibly retroactive under step one, the Court does not reach step two to ask whether FAR 52.204-7 (NOV 2024) clearly expresses the FAR Council's intent that the new rule be retroactively applied. *See Travenol Labs.*, 118 F.3d at 752.

as the impetus for the change.  According to the FAR Council, it never intended FAR 52.204-7 (OCT 2018) to create a continuous SAM registration requirement and, equally important, it believes such rule creates "an unwitting barrier to entry and significant disruption" in the federal procurement system.  AR 20890 (quoting 89 Fed. Reg. at 89474).  In the FAR Council's judgment, perpetuating a continuous registration rule would, among other things, harm offerors (especially small businesses) by "[i]ntroduc[ing] significant risk of lost income . . . due to temporary lapses in registration often for minor and technical reasons" as well as procuring agencies by "complicat[ing] the ability of the Government to meet its mission needs with best-value solutions." *Id.*  Policy-based determinations such as these fall comfortably within the FAR Council's congressional mandate and rulemaking authority.  *See* 41 U.S.C. § 1302(a) (establishing the FAR Council "to assist in the direction and coordination of Government-wide procurement policy and Government-wide procurement regulatory activities in the Federal Government"); *id.* § 1303 (authorizing the FAR Council to "issue and maintain . . . a single Government-wide procurement regulation, to be known as the [FAR]").

Zolon has failed to establish that the NGA's adoption of the FAR Council's reasoning in the very procurement that spurred the FAR Council to change the rule lacks rationality.  Incorporating FAR 52.204-7 (NOV 2024) into Amendment 12 prevents the type of losses for small-business offerors and the type of complications for agency-mission needs that FAR 52.204-7 (OCT 2018) unintentionally imposed.  The MFR coherently and reasonably explains this basis by incorporating the FAR Council's rationale.

In addition, the MFR explains that incorporating FAR 52.204-7 (NOV 2024) carries out the NGA's "original intent" for SAM registration, AR 20891, and will permit the Agency to make awards to "offerors that provide the best value to the Government based on the stated evaluation

criteria, without limiting the pool of potential awardees due to a superfluous, and now non-existent administrative requirement," AR 20892.  In what it characterizes as "a strong sense of déjà vu," Zolon argues that the Agency is merely recycling reasons for its current action that the Court previously rejected in *Zolon I*.  ECF No. 45 at 11.  Zolon does not appreciate that this protest presents a very different set of facts from its prior protest.  In *Zolon I*, the Court found that the NGA's one-time deviation from FAR 52.204-7 (OCT 2018), though otherwise legally permissible, was not rationally supported by the reasons documented in the Agency's deviation decision.  172 Fed. Cl. at 757.  In the instant case, the NGA does not seek to *deviate* from a mandatory FAR requirement that would otherwise eliminate best-value offerors for temporary SAM registration lapses, but rather to *follow* the current FAR requirement which was specifically changed to reflect a policy against eliminating best-value offerors for that reason.  The Court's rulings in *Zolon I* are therefore not dispositive here.

For example, the Agency states that FAR 52.204-7 (NOV 2024) fits with how the NGA "had always intended" the SAM registration requirement to apply.  AR 20891.  In *Zolon I*, the Court found a similar original-intent justification lacking because the Agency's intent to provide itself with discretion to waive non-compliance with the RFP's requirements was "inconsistent with the plain language of FAR 52.204-7(b)(1) [(OCT 2018)]," a mandatory provision that the NGA lacked discretion to waive.  172 Fed. Cl. at 754.  It was also inconsistent with the NGA's representation to the GAO that on corrective action it would apply the FAR rule based on the language in the RFP.  *Id.*

The record in this protest shows that the NGA did not interpret FAR 52.204-7 (OCT 2018) as imposing a continuous SAM registration requirement.  Indeed, the MFR explains that around the same time that the Agency was preparing the decision memo justifying the deviation, "NGA's

Senior Procurement Executive, Kelly Pickering, requested the DoD representative to the FAR Council clarify that a lapse in active registration on SAM.gov did not render that offeror ineligible under FAR 52.204-7 as long as the offeror was active at the time of proposal submission and time of award." AR 20891. Although the Agency's reading was a misinterpretation of the plain language of the prior rule, *see Zolon I*, 172 Fed. Cl. at 754, the request led to the FAR Council clarifying that it did not intend FAR 52.204-7 (OCT 2018) to impose a continuous requirement. And consistent with its authority, the FAR Council removed the language that led courts to interpret the SAM registration rule in that way. Now, instead of the plain language of the SAM registration rule being at odds with the NGA's intent, the current rule fits with what the NGA intended from the start. The Court sees nothing incoherent or irrational about the Agency's choice to incorporate a FAR change that conforms the language of FAR 52.204-7 to the shared intent of the NGA and the FAR Council. *See Dell*, 906 F.3d at 992 (citation omitted).

Similarly, the MFR explains that the NGA's decision to incorporate FAR 52.204-7 (NOV 2024) through Amendment 12 was based on its judgment that awards to the best-value offerors based on the criteria of the Solicitation is the best way to meet its needs. AR 20891. Conversely, eliminating offerors for "an administrative issue that has absolutely no practical impact on the Government" does not, in the Agency's view, help meet its needs. AR 20892. The NGA made a similar argument in *Zolon I*. The Court found that this rationale presented "a closer question" under the standard of review, but ultimately rejected it because the NGA's basis for deviating "from a mandatory regulatory provision" was that enforcing the requirement "prevent[ed] the agency from awarding the contract to an otherwise successful offeror." *Zolon I*, 172 Fed. Cl. at 757. This rationale did not support the deviation because "[t]hat reasoning lacks a limiting

principle and would allow the Government to sidestep any and all mandatory FAR requirements whenever a requirement operates to exclude a putative awardee." *Id.*

The facts in the instant protest differ from *Zolon I.* Here, the NGA seeks not a deviation from a mandatory FAR requirement but an amendment to incorporate a FAR change. The FAR change specifically adopts the same policy judgment about the SAM registration requirement. The FAR Council stated that although "continuous, active, registration is the anticipated normal state expected of offerors . . . , the Government is now directing that the minimum preaward registration compliance" does not require continuous SAM registration. 89 Fed. Reg. at 89473. Characterizing elimination for a lapsed SAM registration as a "severe ramification[] for offerors," the FAR Council also specifically determined in its judgment that such rule "[u]nnecessarily complicate[s] the ability of the Government to meet its mission needs with best-value solutions." *Id.* at 89474. Again, this is not a scenario where the Agency is attempting to *side step* a FAR rule so that best-value offerors survive in the competition, it is attempting to *follow* a FAR rule that was specifically changed so that best-value offerors are not unnecessarily eliminated. That reasoning is neither arbitrary nor capricious.

To be sure, it would be "of concern" if the NGA were changing the RFP just to ensure certain offerors will win. *Zolon I*, 172 Fed. Cl. at 755. However, sustaining such a concern typically requires that the protestor establish bad faith on the agency's part. *Id.* (citing *EP Prods., Inc. v. United States*, 63 Fed. Cl. 220, 225–26 (2005)). "There is a 'strong presumption that government contract officials exercise their duties in good faith,'" and to defeat that presumption "a protestor must present 'well-nigh irrefragable proof' that the government officials did not act in good faith." *BAE Sys.*, 163 Fed. Cl. at 238 (internal citations omitted). Zolon has disclaimed any arguments of bad faith, *see* ECF No. 45 at 38; but even if it had not, as the Court found in

*Zolon I* "there is no 'irrefragable proof' that [certain] offerors [in the CLOVER procurement] are 'preferred' or 'pre-selected,' or that the corrective action [at issue here] is a sham." 172 Fed. Cl. at 758.

Therefore, the Court applies only the arbitrary and capricious standard. Under that deferential standard of review, the NGA did not act arbitrarily in deciding to amend the Solicitation to incorporate FAR 52.204-7 (NOV 2024). Upon reviewing Amendment 12 and the MFR, and considering the entirety of the record, the NGA "provided a coherent and reasonable explanation of its exercise of discretion." *Dell*, 906 F.3d at 992 (citation omitted).

\*       \*       \*

In sum, the NGA has the discretion in this case to include new FAR rules in the existing RFP, and doing so is neither a violation of the presumption against retroactivity nor an irrational exercise of discretion.

### C. Because Amendment 12 Is Not Arbitrary and Capricious, the NGA Did Not Breach its Implied Duty to Fairly and Honestly Consider Zolon's Proposal.

Finally, Zolon argues that the Agency's continued attempts to amend the Solicitation "to allow for the re-selection of offerors who should have been deemed ineligible due to lapsed SAM registrations" violated its duty to fairly and honestly evaluate Zolon's proposal. ECF No. 45 at 36. As Zolon acknowledged at oral argument, its implied-breach argument is largely derivative of its arbitrary-and-capricious argument. *See* ECF No. 74 at 143:22–25. This is an appropriate concession because the standard for implied breach to fairly and honestly consider a bid "is whether the government's conduct was arbitrary and capricious." *Southfork Sys., Inc. v. United States*, 141 F.3d 1124, 1132 (Fed. Cir. 1998). And although an implied-breach claim may warrant the Court awarding an additional remedy not otherwise available under the arbitrary-and-capricious standard, the claim cannot survive in the absence of an irrational agency action. *See*

ECF No. 74 at 143:22–25 ("[T]he reason why that count matters is because there's a specific type of relief associated with it, which is, namely, bid preparation and proposal costs.").  Therefore, because the Court concludes that Zolon's arbitrary-and-capricious claim fails, it also concludes that Zolon's implied-breach claim fails.

### D.    Zolon Is Not Entitled to Injunctive Relief.

Zolon requests that the Court permanently enjoin the NGA from proceeding with Amendment 12 and order the NGA to rescind the amendment, disqualify any offerors who failed to maintain continuous SAM registration under FAR 52.204-7 (OCT 2018), re-evaluate all remaining proposals, and render a new award decision.  ECF No. 45 at 44.  To obtain permanent injunctive relief, Zolon must show that: (1) it prevailed on the merits; (2) it will suffer irreparable harm if injunctive relief is not granted; (3) the balance of hardships weighs in favor of granting injunctive relief; and (4) injunctive relief is in the public interest.  *See PGBA, LLC v. United States*, 389 F.3d 1219, 1228–29 (Fed. Cir. 2004).    Under this standard, "[n]o one factor, taken individually, is necessarily dispositive. . . . [T]he weakness of the showing regarding one factor may be overborne by the strength of the others."  *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993).[6]  "At the very least, however, a protestor must actually succeed on the merits and demonstrate irreparable harm."  *Zolon I*, 172 Fed. Cl. at 761 (citing *CliniComp Int'l, Inc. v. United States*, 134 Fed. Cl. 736, 746 (2017), *aff'd*, 904 F.3d 1353 (Fed. Cir. 2018)); *see also Altana Pharma AG v. Teva Pharms. USA, Inc.*, 566 F.3d 999, 1005 (Fed. Cir. 2009).

---

[6] Although *FMC* concerns the award of a preliminary injunction, "[t]he standard for a preliminary injunction is essentially the same as for a permanent injunction," except the plaintiff must show actual success, rather than a likelihood of success, on the merits to obtain a permanent injunction.  *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987).

As explained above, Zolon has not prevailed on the merits. For that reason, injunctive relief is not warranted in this case. *See Mitchco Int'l, Inc. v. United States*, 26 F.4th 1373, 1384 n.7 (Fed. Cir. 2022).

## IV. CONCLUSION

For these reasons, the Court **GRANTS** the Government's Motion to Complete (ECF No. 49), **DENIES** Plaintiff's Motion for Judgment on the Administrative Record (ECF No. 45), and **GRANTS** the Government's and Defendant-Intervenors' Cross-Motions (ECF Nos. 50, 47, 48, 52, 53). Exacta's Motion to Dismiss (ECF No. 53) and the Government's Motion to Modify Protective Order (ECF No. 65) are **DENIED AS MOOT**. The Clerk is directed to enter judgment accordingly.

**SO ORDERED.**

Dated: April 30, 2025                    */s/ Kathryn C. Davis*
                                          KATHRYN C. DAVIS
                                          Judge